The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nine, give their attention, for the court is now sitting. God save the United States and this Honorable Court. Please be seated. All right. We are pleased to be hearing these four cases this morning, and as the clerk's office has no doubt made you aware, Judge Keenan will be participating with us remotely, and if she raises her hand, I would appreciate it if counsel would simply pause and answer whatever questions she may have. So we'll begin with Hayes v. Delbert Services Corporation, and Mr. Wessler, we'd be pleased to hear from you. Thank you, Your Honor. May it please the Court, Matthew Wessler, for the appellants, Cross Appellees James Hayes, Deborah Grant, and Herbert White. I'd like to start by focusing on what is an undisputed feature of this arbitration contract, its prospective waiver of a borrower's statutory rights under federal and state law. Under this agreement, and Delbert does not dispute this, a borrower may not bring any federal or state law claims in arbitration, and an arbitrator, no matter who it is, may not apply any other law other than the law of the Cheyenne River Sioux Tribe. If there's one consistent theme from even the most pro-arbitration decisions of the Supreme Court, it is that an arbitration agreement that forbids the assertion of certain statutory rights will not be upheld. Counsel, can I just ask, did you raise that argument in front of the district court? We did, Your Honor. This argument was raised in our opposition to the motion to compel arbitration on page 27. We've laid out in our reply brief on page 12 at note 3 where that specifically is. But dating back all the way to Mitsubishi Motors more than three decades ago, and continuing on all the way through to Italian Colors, the Supreme Court has repeatedly emphasized that the FAA does not allow an arbitration agreement to prospectively waive a party's statutory rights. And one that does is unenforceable. That black letter rule, standing alone, requires invalidating the arbitration contract in this case. And I'd like to point the Court's attention. You can certainly arbitrate statutory rights. I'm sorry, Your Honor? You can certainly arbitrate statutory rights if there's an agreement to do so. That's correct, Your Honor. This agreement, however, forbids any party from asserting those statutory rights. And it forbids any arbitrator from deciding any claim raised under federal or state law. And if I could, I'd like to point the Court's attention to pages 155 and 156 of the joint appendix, which contains a complete version of this arbitration contract. And I'd like to draw the Court's attention to several key, and again, undisputed clauses. This is on JA-156. The arbitration contains a clause titled, Applicable Law and Judicial Review. And in this clause, the agreement straightforwardly states, and it's in all capital letters, that it shall be governed by the law of the Cheyenne River Sioux Tribe. And then again, on JA-155, the arbitration contract prohibits any arbitration from applying, and I'm quoting now, any other law other than the law of the Cheyenne River Tribe. And then again, elsewhere, on JA-154, the agreement states that, quote, no United States state or federal law will apply. These clauses, Your Honors, could not be clearer. They forbid a party from asserting any claim based on any federal or state law, and they bar any arbitrator, no matter who it is, from applying any law other than the law of the tribe. And I think it's worth noting at this point that Delbert contests none of this. In fact, it's quite forthright that this is what the contract contemplates. All Delbert says in response to this argument, and we made this argument in our opening brief and in our reply, all Delbert says is that what consumers have available to them in any arbitration proceeding is tribal law. For instance- How does this differ from any choice of law provision in an arbitration agreement? For example, in contracts, you routinely have a choice of law provision saying this contract should be governed by the laws of New York. And if the parties were to have a choice of law provision in their contract here, whether it be state law or tribal law or what have you, that's just a choice of law provision in a contract. And why wouldn't it simply be a matter for the arbitrator to apply the party's chosen law to the controversy before it? Because, Your Honor, what a party may not do is include a choice of law provision that forbids any party from asserting statutory rights. So, for instance, a party could not include a form selection clause that says no federal statutory claims may be advanced in this arbitration. Well, does the agreement actually say that? Absolutely, it does, Your Honor. And again, this is on 155, 156 of the arbitration contract. It says an arbitrator may not apply any law other than that of the Cheyenne River Sioux tribe. And it says elsewhere that no United States state or federal law may apply. It is no different than if the agreement had said you may not bring an FDCPA claim, a Federal Truth in Lending Act claim, or any consumer protection claim based on state law. And the Supreme Court has repeatedly emphasized that arbitration contracts that include that kind of prospective waiver of statutory rights are unenforceable under the FAA. Again, Delbert doesn't contest that that's what, in effect, its contract is designed to do. Counsel, I'm sorry, I don't have your motion in a, I'm sorry, I don't have it with me, the part where you say you raised this in front of the district court. But the way you present it, and I understand your argument, it does seem like an extremely fundamental defect in this arbitration agreement. And so your view is the district court just somehow missed this when it compelled arbitration? Yes, Your Honor. I think the district court missed several key features of this arbitration clause that make it unenforceable. One is it didn't address this prospective waiver of statutory rights. It also, I think, materially misread what this arbitration clause actually provides for what kind of arbitration it, and for what kind of arbitration it allows. Now, the prospective waiver of statutory rights is really but the tip of the iceberg here. As we've explained in our briefs, the arbitration contract in this case requires a process that should be conducted, is supposed to be conducted under the watchful eye of a legitimate governing tribal body, but it delivers no such thing. A proceeding under tribal oversight simply is not a possibility. What language do you think prohibits raising a federal statutory right? Your Honor, on, yes, on JA 156 of the arbitration contract, the agreement states that the quote, and I'm quoting here, the arbitrator will apply the laws of the Cheyenne River Sioux Tribal Nation and the terms of the agreement. It also says on 155, and this is in the middle of the page on 155, any arbitration under this agreement may be conducted either on tribal land or within 30 miles of your residence at your choice, provided that this accommodation for you shall not be construed in any way. A, as a relinquishment or waiver of the Cheyenne River Sioux Tribe's sovereign status or immunity, and here's the key language. Or B, to allow for the application of any law other than the law of the Cheyenne River Sioux Tribe of Indians to this agreement. And then again on JA 154, the agreement states quite clearly, you expressly agree that this agreement shall be subject to and construed in accordance only with the provisions of the laws of the Cheyenne River Sioux Tribe, and that no United States state or federal law applies to this agreement. We'd submit, your honor, that that is about as clear a prospective waiver of federal law as you could write into an agreement. But it again, it is only the tip of the iceberg, because in effect what this agreement does, is it creates an impression that arbitration will be conducted under the auspices of a quasi-sovereign entity, but it delivers no such thing. Multiple federal courts of appeals have squarely held that the language in this arbitration contract means that it cannot be enforced. And members of this court have likewise cast serious doubt on this exact contract's enforceability. And here again, I'd like to draw the court's attention to the exact words in this arbitration agreement at 155 and 156 of the joint appendix. Because I think it couldn't be clearer. The first paragraph, the first clause of Delbert's contract here, titled Agreement to Arbitrate on JA 155, states that any arbitration, and I'm quoting right now, shall be conducted by the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this agreement. That is mandatory language. The 11th Circuit looked precisely at that clause and it said that creates an exclusive right to a tribal forum. They said the express statement that I just quoted is, quote, tantamount to designating the forum as the exclusive arbitral forum, even if the word exclusive is not used. As the loan agreement says, the arbitration shall, that is required to, and here the 11th Circuit cited Black's Law Dictionary, be conducted by an authorized representative of the tribe. We'd submit that there is no other way to enforce this agreement according to its terms than to require some tribal participation in an arbitration. Well, counsel, don't you want to address the choice? I mean, your colleagues say that this is distinguishable from the 11th Circuit, the 7th Circuit case, because this agreement, unlike those, has this choice of arbitrator provision. Isn't that so? Yes. Yes, Your Honor. But, yes, Your Honor. But to be clear, it is not a choice of arbitrator provision. Well, that's what it's called. That's what it's called, but it is not what it says. What it says, and again, I'd point the Court to the exact language in this clause, it says that regardless of who demands arbitration, the parties will have the right to select several of, a number of different other organizations, AAA and JAMS. However, it goes on to say that those organizations may only administer the arbitration. There is key limiting language in what those other providers may do, and that's only to administer the organization. And we've cited case law and treatises that make clear that there's a distinction between administering an arbitration and conducting one. Can I ask you a question about how we should interpret this? You know, there's that presumption in favor of arbitrability. Is it your view that that presumption applies as we try to figure out this question, how these two? No, Your Honor. That presumption absolutely doesn't apply when what's at stake is a threshold question about whether there is even an agreement to arbitrate at all. And here, there is no actually enforceable agreement to arbitrate on its face. As it's written, arbitration cannot occur under the terms of this contract. And the policy preferences, the canons that apply once you have an enforceable agreement to arbitrate simply don't trigger when what's at stake is whether under the FAA there is even an enforceable agreement to arbitrate. And I want to stress to the Court that sanctioning this kind of effort to get around what the contract itself says would really invite a race to the bottom. It would allow companies to aim for the floor, to include or impose as many illegal or unfair provisions in a contract as possible, safe in the knowledge that courts would step in to save them when it turned out that what the system they designed, which might be a sham, is in fact not the one that they ultimately want to then force consumers down the road into. And I think this Court has made that point clear in Murray and in Hooters. I think courts across the country have said the same thing. The Seventh Circuit and the Eleventh Circuit have both squarely held... It's the choice of forum that troubles you or the choice of law? It's both, Your Honor. It's the choice of forum and the choice of law, because what they do is they work in tandem to create a system which looks like it is a legitimate forum, but when anybody gets into it, what it turns out to be is a sham. Why is the choice of forum problematic if the arbitration is going to be administered by the American Arbitration Association or JAMS? Two responses, Your Honor. First, no AAA or JAMS arbitrator can be designated under the express terms of this agreement. But number two, even if you could, even if you could have a AAA or JAMS administered arbitration with a AAA or JAMS arbitrator, that arbitrator would be barred from applying any federal law in resolving the dispute. The arbitrators derive their authority from the terms of the contract. The Supreme Court has made that quite clear in a series of decisions. In Italian Colors, in Stolt-Nielsen, they've made it clear that an arbitrator has no more authority than what it's allowed to do under the terms of the contract, and the terms of this contract expressly bar any arbitrator from applying any federal statutory law. I see I'm out of time, and I'll save the rest for rebuttal. Thank you. Thank you. All right, Mr. Fisher. Thank you, Your Honor. May it please the Court, Brian Fisher for the appellee, Delbert Services. The arbitration agreement that's before the Court is currently being utilized by multiple borrowers in arbitrations before JAMS and AAA using their own listed arbitrators. So we've heard argument, which is really hypothetical and speculative about how this clause might function or operate. But I'd like to focus on what's actually happening, the evidence. I'm sorry, in those arbitrations, are people, are plaintiffs able to bring their federal statutory claims? And if so, how does that work under this agreement? The arbitrations are all at very early stages with arbitrators that have been appointed, and none have played out to the point where that question has risen to the top. On that question, though, about the bringing of federal statutory claims, I do want to take exception with something that counsel said about this being raised below, and he helpfully gave a pin site for everybody where this supposedly is. On page 27 of the opposition brief to the motion to compel below, this argument wasn't raised. There's a reference to this clause on page 27, just the general idea that tribal law applies but not federal law. But there's no argument made that that clause in any way whatsoever works to poison the entire ADR apparatus that's been clearly set out by this agreement. So we do submit that the issue has been waived. Even if the court, though, believes otherwise, that the issue was preserved as it needed to be, it's of no moment here for multiple reasons. Number one, there is a severance clause in this agreement which says that if any portion of the arbitration agreement is deemed to be invalid, then it's to be excised from the agreement, and the agreement continues to operate. Severance clauses have been the subject of many federal court decisions, and have in many cases saved arbitration clauses that would otherwise be poisoned. Another issue is there's a delegation clause here, just like in Rent-a-Center from the Supreme Court in 2010. The delegation clause saves for the arbitrator, delegates to the arbitrator, all attacks on validity, enforceability, so on and so forth. So two questions. What, again, among the arguments that he brought up, the one he seemed to put the most emphasis upon was the language that no United States state or federal law applies to this agreement. Now, tell me, you say that was not raised? Correct. Okay. It was absolutely not raised below. Okay. But let's assume, arguendo, that it was raised. Sure. Why, in your judgment, is it not problematic? For a few reasons. The case law that counsel invokes really doesn't actually go so far as to invalidate any arbitration clause on the basis of the presence of a choice of law provision that can be arguably interpreted to exclude the possibility of bringing federal claims. Is there any other way to interpret it? Because I have trouble understanding what this means other than you may not raise your federal statutory claims in this arbitration. I think that courts have made distinctions between clauses that say that no law other than what we say applies governs this agreement and questions about the enforceability of the agreement and that distinction can be made. I'm familiar with some cases in New York that draw distinctions between governing agreements and enforceability. But I do have to say, though, even under Mitsubishi Motors, which is the primary case upon which appellants rely, in a footnote in dicta, the court says that if there is a waiver, and I'm paraphrasing, of course, but if there is a waiver of federal statutory claims that can work to invalidate a clause, but then they say, if you go on, and this is the issue that was before them, they say this is a question about whether we're going to enforce the arbitration agreement at the beginning. We're not going to reach that question. We're not going to touch that issue. It's premature. That's a question that comes afterwards when challenging whatever result comes out of the arbitration. The normal choice of law provision doesn't, just as New York law shall govern this provision, it doesn't have an affirmative statement that no United States state or federal law applies to this agreement. Doesn't that differentiate this from the usual choice of law provision? It's certainly different language, Your Honor, but I would again submit that this is a question that is vested in the arbitrator to decide. It's a procedural question about the construction of a choice of law agreement, the operation of a choice of law agreement, and this is something dealing with the same exact arbitration clause in the Kempth matter from the Northern District of Illinois. I'm sorry, your question. No, no, I just really want to make sure I understand your position. So if this, in fact, said you may not raise any federal statutory claims in the arbitration provided for by this agreement, would you also say that has to be resolved in arbitration? Absolutely, Your Honor. Absolutely. You would, okay. That's something, that's a position, it's from the Northern District of Illinois, but the same attack was leveled against this exact language. And the court there resolved it by saying that this is not for the court to decide, this is a procedural question for the arbitrator about the operation of a choice of law provision. And I would again turn the court's attention to even if that's not persuasive for the court, the delegation clause, even if that's not persuasive for the court, we still have a severance clause in this arbitration agreement that says that if any part of this agreement is found to be invalid, it's to be excised, then the rest of it is to operate normally. But I do want to Mr. Fisher, I have a question, please. Yes. Mr. Fisher, courts also have said that if a certain provision of a contract is so integral to the operation of the contract, that it may not necessarily be able to be excised. Haven't they said that? In the- And as a follow-up, let me also ask you before you answer, you have a provision here at Joint Appendix 155 saying that the arbitration has to be conducted by the Cheyenne River Sioux Tribal Nation, okay? And then down below, they plugged in another paragraph saying that the- that you can have the AAA or JAMS administer the arbitration. Well, if it's being conducted by the Cheyenne River Sioux Tribal Nation, how can it be administered by AAA or JAMS? And why isn't that just so fundamentally integral to this arbitration agreement so as to not be able to be excised or severed? Thank you, Your Honor, and I'll address those questions, if I may, in reverse order. This is being utilized by AAA and JAMS, and an attack has been made on this very clause within AAA, and the administrator- I'm sorry, the arbitrator there who is from a AAA list said this was not a convincing attack. The way that these two clauses work together is under agreement to arbitrate, it says you agree that any dispute except as provided below will be resolved by arbitration which shall be conducted by, et cetera, et cetera, the tribe. Under choice of arbitrator, we have regardless of who demands arbitration, you shall have the right to select any of the following organizations, AAA, JAMS, two of the most well-respected, experienced ADR firms on the planet. It goes on to say- I'm sorry, counsel, the except as provided below, you're not arguing that that exception clause applies to who will conduct the arbitration, are you, because that's not the way the sentence reads. I absolutely am arguing that point. But even if there's any ambiguity there, Your Honor- It doesn't seem ambiguous to me. It seems like except as provided below clearly refers to which disputes are subject to arbitration. And then you get down to the small claims exception, and that's a kind of dispute that doesn't have to be arbitrated. Respectfully, Your Honor, I think at this point, excluding the court below here, four other federal district courts have construed this exact language, which is in contrast to the language, as you pointed out, that was before the 7th Circuit in Jackson and the 11th Circuit in Anishnabeg. And four different federal district court judges have come to the conclusion that at the very worst, at the very worst, this is an ambiguous clause. And that being the case, that being the case under the canons of construction that are given to us by the FAA with the emphatic policy favoring arbitration, the doubt here is to be resolved in favor of arbitration. Even if the term administer is viewed as myopically and as narrowly as the appellants are advocating, that still doesn't spoil this clause. And here's why. When you go to JAMS or AAA for administration, in their own rules, they have provisions. This is Rule 15 of the JAMS rules. We cite to the JAMS rules in general in our brief. JAMS has a provision for what happens when there's a deadlock in the selection of an arbitrator. So if here, we imagine a situation where Mr. Hayes goes to arbitration and goes to JAMS and says this arbitrator must be from the tribe. And we say, no, it can be from the JAMS or AAA list. That's for the administrator to resolve. That's what the administrator does. Mr. Fisher, if I could ask one more question, please. If you look, though, at the bottom of 155, the contract says the arbitrator has the ability to award all remedies available by statute at law or in equity to the prevailing party except for class action relief. Okay. Well, how can this contract be enforced if in one part it says that the arbitrator has the ability to award all remedies available by statute at law or in equity and then the other part says that no federal or state law can apply and only the law of the Cheyenne River Sioux tribe. So it seems to me that this is just so fundamentally contradictory in its basic premise as to what law applies. Well, I don't know if I would go so far as to say that, Your Honor. But again, if this is something that is a point that is found to be creating a contradiction or an ambiguity, under the delegation clause of this agreement, this is for the arbitrator to decide. And that's what writes the Secretary of Counsel. But, sir, how is that an ambiguity if the contract says that the arbitrator can apply all remedies available by statute at law or in equity and then in another place says no federal or state law can be applied? That is, it seems to me that it's an internally totally contradictory and unenforceable agreement when you look at that. How would you answer that? Well, I would answer that by saying that I don't know if I agree that it's a flat contradiction because here it might be thought to be more specific about what it is that does apply to the construction or to any disputes arising out of this agreement. But more importantly, even if it's a flat contradiction, Appellant's Counsel hasn't presented a single case where a question about what law, what substantive law is going to apply to a dispute that's to be heard in arbitration means that we scrap the arbitration clause altogether and we hear the controversy in court. There's not a single case that says that, even the integrality cases that Judge Keenan referred to. And the Fourth Circuit's never addressed integrality. And I would submit there is no such concept as integrality in the FAA. It's not in the text. And this is something that the Seventh Circuit said in the Green case. But even in the integrality context, that's when we're asking the question. Those cases have arisen typically where we don't know who's going to be arbitrating the dispute. And there's a case from the Third Circuit in 2012 called Kahn, which is very similar to this one, where Dell Computers had terms and conditions accompanying the sale of all of their computers to individuals using them. And it said a member. When you refer, I want to keep coming back to this. It says no United States state or federal law applies to this agreement. Yes. Is that in your view some kind of waiver of federal and state rights that was undertaken here by the party? I don't believe that my client has taken that position in an arbitration. I'm asking you whether you would regard this as essentially a waiver. I don't think I would view it as something that goes so far as an explicit waiver of the right to bring claims saying thou shalt not bring such and such claims. I don't think I would view it as going so far as to do that. I agree, though, that it does create a question about what law is going to apply. How could it be anything other than a waiver if the arbitrator is expressly forbidden from applying any kind of federal or state law? It would have to be a waiver, wouldn't it? Well, if it is a waiver, Your Honor, it's a waiver no matter where the case is litigated, no matter where the case is adjudicated, whether it's in court or in arbitration. And again, I keep coming back to the point that while it's related to this controversy, it's not something that is so antithetical to the idea of enforcing this arbitration clause. In one of the arbitrations – I guess I'm so – it just – conceptually, I'm just having trouble following that. So say I have a federal claim and I'm looking at this agreement and this agreement tells me I can't arbitrate that claim. That's not something I can bring to arbitration. You're saying I have to go to arbitration to say I can't bring my claim here? Well, according to – I don't – I guess I'm just not following. I totally understand what you're saying, that most issues are reserved for the arbitrator, sort of complexities about how to understand a particular choice of law provision. But this agreement is telling me I don't have a right to arbitrate the claim I want to bring forward. So why do I have to go to arbitration to say I'm not allowed to be here? But it doesn't restrict it just to arbitration. I mean, this isn't a governing law provision that actually in the Kempf case, the court noted this is not in the arbitration agreement itself. This is a governing law clause. And here it says that you expressly agree that no U.S. law applies to this agreement. That's not something that is exclusive to the concept of arbitrating. So even here, federal statutory claims have been brought. So it wasn't viewed as such a repellent clause that it wasn't something that could even be done. There are federal statutory claims that have been brought in this complaint here. But if this resembles a waiver, waivers have to be voluntary and intelligent, you drafted the contract, wouldn't you have to make the waiver more clear? I believe so, Your Honor. To me, this is so obviously not something that can serve to void and vitiate this entire agreement that it wasn't even raised below. Well, that's a different point. I understand that. It's difficult to analogize the provision to the typical choice of law provision, which just says affirmatively that such and such a law shall apply to this agreement as opposed to being an affirmative statement on the other hand, that such and such a law may never apply to this agreement. And so it's not your typical choice of law provision, in which case I think the arbitrator would work it all out. And it's not your typical waiver provision where you say so and so hereby understands that this and this right may not be asserted in the proceeding. It seems to me to the extent that an arbitrator's powers derive from the contract that the arbitrator is expressly forbidden from applying any kind of state or federal law. How can the arbitrator apply state or federal law in light of this language? Although I'm running out of time, if I may respond, Your Honor. Go ahead. If an arbitrator has the view that you've just expressed, then there's a very easy solution for the arbitrator. The arbitrator would look at this clause and say, this is not one that's enforceable under federal law, and therefore I'm going to sever it from the agreement and proceed with the arbitration. That is something that the severance clause in the agreement provides for, and that's the solution to this in a way that will be faithful to the concept, the emphatic federal policy. I think the problem with this particular agreement or the way you went about it is you had something where the arbitration looked like it was going to be administered by tribal arbitrators if they even existed, and that ran into trouble with the courts. And so you added this AAA and JAMS provision on top of it, and it just turned out to be a mishmash. Your Honor, unfortunately, I know that appellants have made that point in their brief. That's actually not, as a matter of fact, at all the sequence of what happened here. Before there was any in-court challenge to the other version of the arbitration clause, which is the subject of Anesh and Boer and the subject of the Jackson case, this clause was drafted. And we know that just by looking at the dates that these borrowers took out these agreements that have this language in it. So this wasn't some sort of response to there being negative case law. And there really hasn't been any trouble encountered in the courts under this arbitration clause. The only decision that actually took this arbitration clause and invalidated it was the Parnell case in the Northern District of Georgia, which was overturned a few weeks ago by the 11th Circuit, the same 11th Circuit, the same 11th Circuit that gave us the Anesh and Boer ruling on the different clause. Was that the same contract? The same exact contract, Your Honor, the same exact contract. And there the court said there hasn't been sufficient attack on the delegation clause in this arbitration agreement, and therefore the case must be remanded. That same court said that the Anesh and Boer version of this brought us to an unavailable ADR forum. If that same exact court felt that that was unavailable, why on earth would it also direct somebody to attack it? Is your position that as long as the contract delegates to the arbitrator, that from that point on, as long as it delegates, let's give you credit, to a reputable and responsible arbitrator? AAA James. AAA James. And I think they're both recognized to be reputable bodies. Then if that delegation is acceptable, then every other question is for the arbitrator to decide. That's exactly correct, Your Honor. And then afterwards we go according to the FAA with what sorts of appellate challenges can be taken. But if the arbitrator's power, as you say, well, it's for the arbitrator to decide, but if the arbitrator's power also derives from the contract, is it even conceivable or possible for the arbitrator, no matter what the arbitrator may think, to apply federal or state law? His power has to do that, is he not? I don't agree, Your Honor. If the arbitrator felt that that was an invalid prospective waiver, and I recognize that my time has been exceeded, but if I may answer, if the arbitrator believes that's an invalid prospective waiver, then the arbitrator will apply the severance clause and will just excise that from the agreement and proceed to apply the law that the arbitrator believes should be applied, just as if we have a choice of law provision in a contract that's before an Article III court, where it doesn't bear a reasonable relationship to the jurisdiction whose law has been selected. That clause is invalidated and we turn to it. If the arbitrator begins to remake the party's contract? It's not remaking it because we have a severance agreement that actually has the parties agreeing ex ante. If there's any clause here found to be invalid, it's removed from the contract and the rest of it applies, so it's perfectly at peace with the contract itself. And I have to stress as I close, there are, at the moment we've submitted to the court, evidence of six arbitrations that are being conducted under this very clause, not the old clause that appellants cling on to from Dinesh and Boren Jackson, but this very clause between the most esteemed ADR firms on the planet, AAA and JAMS. All the fees are being paid for under this agreement by Delbert Services, by the respondents. The arbitrations are within 30 miles of the resident's home. There's nothing unavailable about this mechanism and there's certainly nothing so fundamentally unfair about it that the proper solution here is to totally rewrite the party's agreement, which has coursing through its veins arbitration and have this matter litigated as a class action in court. Thank you very much, Your Honor. All right. Mr. Hassler? Your Honor, I'd like to make just a few points. Let me ask you just a preliminary question. Of course. If the delegation clause in the arbitration agreement is to a reputable arbitral body, why isn't the solution on down the line that an arbitrator can find one provision of a contract to be an invalid waiver or an invalid prospective waiver and then either do one of two things, either decline to apply the provision and allow the federal and state claims to be raised or send it, sever the whole part of the case and send it to a judicial forum or something? I mean, why? Does this provision simply read the arbitrator out of the picture because there are lots of contracts that may have one or another provision that the arbitrator thinks, number one, are just unconscionable or invalid for one reason or another. But that doesn't take it out of arbitral competence. I mean, because there are all kinds of ambiguities in contracts. There are all kinds of contracts that have conflicting provisions. And there are all kinds of contracts that have questionable provisions that arbitrators may find unpalatable. But the fact of those things doesn't necessarily relegate the arbitrator to the sidelines, does it? A couple of responses to that, Your Honor. First, we have directly challenged the delegation clause as unenforceable in this case, unlike in Parnell. And I would encourage the court to go read Parnell. Because Parnell, the court said, the only reason we are remanding the case back to the district court is because the parties failed to expressly challenge the delegation clause. And they failed to ask the court to refuse to enforce the delegation clause for the same reasons that the entire arbitration agreement fails. In this case, however, that problem is not present. The plaintiffs in this case directly and expressly challenged that clause, arguing that it is unenforceable and fails for the same reasons that the rest of this arbitration contract fail. And so that's a sufficient basis to allow this court to decide on its face whether this entire arbitration contract is enforceable or not. And I'd like to respond, Judge Wilkinson, to your second question, which is about whether an arbitrator is empowered to sever one or some provision in an arbitration contract if it, in fact, is ambiguous or inconsistent. And what we have here, though, is not a loan provision addressing some ambiguity about a trivial matter or a procedure that is to be used in arbitration. For instance, how many depositions the parties might agree to in arbitration. What we have here is a prospective waiver of federal statutory rights. And what the Supreme Court has said is that a prospective waiver of statutory rights renders an arbitration contract unenforceable on its face. It cannot be sent to an arbitration forum, regardless of what that forum is, regardless of who the arbitrator is, because the arbitrator will not be empowered to hear the claims and resolve the claims in a manner consistent with federal law. What do you think would have been a valid waiver? I'm sorry? What do you think would have been a valid waiver? There is no valid waiver when it comes to statutory federal claims when a party asks a court to enforce an arbitration agreement under the FAA. There's a bright line rule, and the Supreme Court in Italian colors recently made this very clear. The court there said that that rule, the rule that you cannot prospectively waive statutory rights, and I'm quoting, would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. That's a threshold gateway question that this court has to decide before. Statutory rights can be arbitrated. Absolutely. Absolutely. There's no problem with that. Absolutely. But this agreement, Your Honor, does not authorize an arbitrator to hear those statutory claims, and it bars any borrower under this contract from bringing those claims in arbitration. That's why it's a prospective waiver and not something that an arbitrator. Is it possible that if the waiver language were expressed in different terms, that an undersigned party understands that he or she is hereby waiving statutory rights, et cetera, in arbitration? Is that valid? No, Your Honor, not under the Supreme Court's FAA jurisprudence. But we don't need to go that far. Absolutely not. I think you can resolve this case based exclusively on the atypical and carefully crafted language designed to create the facade of a legitimate arbitration dispute resolution forum, but to ultimately provide. The problem I have is it may be an attempt to sneak a waiver through, and waivers are generally supposed to be open, particularly in the debt service or draft of the contract. Correct. And if you're going to waive rights, it would need to be more open. I wouldn't run from Your Honor's suggestion, but I do think that the waiver language in this contract is quite clear, that it bars any consumer from bringing their claims. Well, I'm not sure that it is. I'm not sure that it's not some kind of waiver sub silentio that's being attempted here. I mean, what I'm saying is I'm just reluctant to go beyond the particular language in front of us. And again, I don't think this Court need go beyond the particular language in front in what's contained in this contract because I think the language in this contract is clear, it is atypical, and it is carefully crafted in a way that runs quite afoul of the FAA. I see my time has expired. Thank you, Your Honor. Thank you. We have a conditional cross appeal, and I understand that we sort of overran time previously, but I'd like to address it very briefly if I may, and, of course, I would hope that. Let me understand from the brief about that. Yes. Why isn't this just looking at the particular language here? The contract is something of a mishmash. We have all of these different questions. We have, you know, the question between administrability and governability, and we have the question of the delegation clause and what the effect of the delegation clause language is, and then we have the question of the agreement that no state or federal law may apply to the agreement. I mean, isn't the whole contract something of a wreck, something of a train wreck? I mean, just almost the totality of the provisions? Respectfully, Your Honor, I don't believe so, and I'm an advocate, obviously, for the appellee's position here, but I would turn to the four decisions that we've put before the court from the Eastern District of Wisconsin, the Northern District of Illinois, from the Eastern District of Kentucky, and the Southern District of Florida, all of which were confronted with the same arguments that we're seeing today. And while each of those opinions in some way, shape, or form notes that there are portions of this agreement that are potentially susceptible to competing interpretations, confusion, things of that nature, none of that was so overwhelming as to take this out of the federal government's emphatic policy favoring arbitration and the Supreme Court's unmistakably clear case law saying that disputes about arbitration, including the construction of the contract, and that's from Moses H. Cohn, everything of that nature is to be resolved in favor of arbitration. And I believe – Excuse me, Judge Harris has a question. So I asked our colleague this question, too. So Moses Cohn, the language you're talking about there, the presumption applies to the question of which disputes fall within sort of the substantive scope of the arbitration agreement, which disputes will be subject to arbitration and which won't. What are the cases that sort of apply that presumption on facts more like this? Converse, Dell, Third Circuit, 2012. Okay, but I'm sorry, there's no sort of Supreme Court equivalent to Moses Cohn for this kind of question? I'm not aware of one, although Moses H. Cohn does say that, No, I know, but it's on this other question, sort of which disputes are covered by the substantive scope of the agreement. I'm just not sure I've seen it because I gather now there's a Third Circuit one. Absolutely. Converse, Dell, I commend it to the Court, and I can give it, but I know my time is limited. But what I will say is when we're talking about scope, it would seem to me that it's even more important that we honor this emphatic federal policy favoring arbitration, resolving doubts in favor of arbitration when we deal with it, because here what we're going to do is sweep away every single claim that would be brought under this agreement when it is quite clear that the parties agreed up front that every single controversy imaginable that can exist between them would be arbitrated. So the question as to whether this 99th grievance falls within the 98 that have been expressed, sorry, Your Honor. Are there claims that the plaintiffs want to bring here beyond their federal statutory claims? They've brought a claim that seeking to invalidate altogether the dispute resolution clause, and I don't recall if they have any state law claims in the complaint under law. It seems like all they want to litigate is the federal claims that they're not allowed to bring to arbitration. And there have been. So I don't know what you mean by sort of 9,000 percent. I'm not so sure if that was by design or what have you, but surely this company has faced myriad lawsuits where state usury claims have been brought. I have no doubt. How are they supposed to bring federal claims if federal law can't apply? They did so here. I mean, they did so in the Eastern District of Virginia. So this obviously wasn't an impediment to that here, and they didn't raise this point below in claiming that this works a total spoilage of the arbitration provision. So this didn't detain them. This didn't restrain them below from doing that. And I agree with Your Honor that waivers, especially in consumer contracts that have been drafted by a counterparty, are not to be inferred lightly from an agreement. And I would submit I'm not quite sure that this really matches what would be thought of as a waiver. If I might, if the Court would allow it. Isn't that part of the problem? I'm sorry? Isn't that part of the problem? Well, a court or an arbitrator or anybody applying what is known to be waiver law, I don't know if anybody would actually come to the conclusion that this is waiver that is made with the necessary clarity and unmistakable and explicit language. Counsel, it just seems like, I mean, you said you closed your last presentation with this very vivid thing about kind of arbitration coursing through the veins or something of this agreement. And when I look at the agreement, the thing that seems to be coursing through its veins to me is this idea that this is going to be a tribal arbitration conducted by tribally authorized arbitrators and under tribal law. It says that over and over and over again. And I guess this goes to Judge Keenan's question about sort of severability. The entire agreement to me, that's what courses through its veins. It turns out there is no tribal arbitrator. You're not contesting that, right? Correct, Your Honor. Okay, there's no tribal arbitrator. You can't really apply the part where it says only tribal law will apply. I just don't really see what's left of this agreement. The whole thing just looks kind of like a sham. I do challenge the premise, Your Honor, and this is something that, again, is in the Kempf case and the Williams case and the Uroma case and the Chitoff case, all of which said that this is very different or materially different from the other clause. Unlike the other clause that was in Eneshan, Boer, and Jackson, where you have the monolithic and uninterrupted presence of the tribe, here we do have under choice of arbitrator, as Your Honor pointed out to Mr. Wessler, a prominent role being assigned to AAA or JAMA. It doesn't say conduct. I mean, you guys drafted the – why does it say administer and not conduct? I don't have an answer to that question, and the record is bereft of anything that dissects why it is that a certain word was chosen. But here's my concern, that this was another thing chosen to obfuscate for the consumer what was going on here. You put this title on it, choice of arbitrator. It sounds good, but when you actually read it, it turns out the arbitrator is still going to be the nonexistent tribal arbitrator. I don't believe that the term administer has such a fixed definition in our lexicon that it excludes. It's not just a term. Well, it does seem like it's a term of art, but it's not just that. It's also sort of the language goes on to say, right, that you're still going to be bound. The arbitrator can't do anything inconsistent with the agreement to arbitrate, which says that the arbitrator has to be – it just seems like when you read the two together, it doesn't get you anything. And that the title is very misleading. With that, except as provided below language beforehand, I want to address that question. I'm sorry. And I'll again refer to the fact that we have before the court six arbitrations under this clause. We have before the court five Federal District Court cases other than the one below. And I'm not to say that, well, five Federal District Courts have come to this conclusion, and therefore you should too.  When we talk about ambiguities, what are ambiguities in contracts? Ambiguities are competing reasonable interpretations. I believe the appellants face a very tall order of not just saying that there are flaws in this agreement, that there are issues with it, it's not in mint condition. I believe they have to show that all of those arbitrations that are being conducted under this, all of the people involved in them, including borrowers who brought their claims on their own volition, not ordered by the court, the four Federal District Court judges other than the one below that have come out with this result, all of them are behaving unreasonably. I believe that's what they have to establish in order to convince this court that this should be invalidated, because otherwise we're back where so many of these cases are about resolving doubts and ambiguities in favor of arbitration, not against them. And again, the Kahn v. Dell case, that was the National Arbitration Forum, it was unavailable. And the court there said, well, it's a binary question. We're either going to have arbitration or we're not. This forum's unavailable. And that court, using the Moses H. Cohn progeny of cases, said doubts are to be resolved in favor of arbitration. Can I have a minute or two? I know that I've overrun my time to address our conditional cross appeal, which comes in play. We've let you go over. You haven't waived it, but we let you go. Understood completely, Your Honor. I appreciate that. Thank you. I will come down in Greek counsel and move into our next case.
judges: J. Harvie Wilkinson III, Barbara Milano Keenan, Pamela A. Harris